**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**
**CASE NO.** ___3:13-cv-30435___

WALLACE L. SCRUGGS, JR.,
6156 Llanfair Drive
Columbia, Maryland  21044,

and

RENEE SCRUGGS,
6156 Llanfair Drive
Columbia, Maryland  21044,

               PLAINTIFFS,

v.                                                          **COMPLAINT**

WAYNE ANDERSON, individually,
       and as successor in interest to
       American Energy Holdings, LLC,
       Wilon Resources, Inc. and E2
       Investments, LLC,
1717 Dr. Martin Luther King, Jr. Street, North
St. Petersburg, Florida, 33704,

US NATURAL GAS CORP WV,
       a Florida Corporation,
1717 Dr. Martin Luther King, Jr. Street, North
St. Petersburg, Florida, 33704,

and

US NATURAL GAS CORP,
       a Florida Corporation,
1717 Dr. Martin Luther King, Jr. Street, North
St. Petersburg, Florida, 33704,

               DEFENDANTS.
_____/

      Come the Plaintiffs, Wallace L. Scruggs, Jr. and Renee Scruggs (the "Scruggs"), by

counsel, and for their Complaint against Defendants Wayne Anderson, US Natural Gas Corp

WV and US Natural Gas Corp, allege as follows:

## PARTIES

1.      Plaintiff Wallace L. Scruggs, Jr. is a citizen in and resident of 6156 Llanfair

Drive, Columbia, Maryland  21044.

2.      Plaintiff Renee Scruggs, is a citizen in and resident of 6156 Llanfair Drive,

Columbia, Maryland  21044.

3.      Plaintiffs Wallace L. Scruggs and Renee Scruggs are a married couple and

undertook the investments described herein jointly.

4.      Defendant Wayne Anderson is a citizen in and resident of 1717 Dr. Martin

        Luther

King Jr. Street, North, St. Petersburg, Florida, 33704.

5.      Defendant US Natural Gas Corp WV ("USNG-WV"), is a Florida corporation

incorporated there effective September 30, 1998, with its principal office at 1717 Dr. Martin

Luther King, Jr. Street, North, St. Petersburg, Florida, 33704; is a wholly owned subsidiary of

Defendant US Natural Gas Corp; is authorized to transact business in West Virginia as a

registered foreign corporation; and maintains a local office at Sugar Branch Road, Prichard,

West Virginia, 25555.

6.      Defendant US Natural Gas Corp ("USNG"), is a Florida corporation with its

principal office at 1717 Dr. Martin Luther King, Jr. Street, North, St. Petersburg, Florida, 33704

and a publicly traded company.

2

## JURISDICTION AND VENUE

7.      The amount in controversy in this matter exceeds $75,000.00.

8.      Plaintiffs are residents of Maryland, and own property interests located in Wayne County, West Virginia.

9.      Defendant US Natural Gas Corp WV is a Florida corporation, with a Certificate of Authority to transact business in West Virginia, which at all times relevant to this action, engaged in business in West Virginia, including Wayne County, individually or through various employees, agents, wholly owned subsidiaries, and non-owned companies.

10.     Defendant US Natural Gas Corp. is a Florida corporation, which at all times relevant to this action, engaged in business in West Virginia, including Wayne County, individually or through various employees, agents, wholly owned subsidiaries, and non-owned companies, including, but nor limited to Defendant US Natural Gas Corp WV.

11.     Defendants US Natural Gas Corp, and Wayne Anderson, at all times relevant to this action, exercised control and influence over the operations and activities of Defendant US Natural Gas Corp WV relevant to the allegations made in this Complaint, including, but not limited to, formulating, directing, authorizing, approving, or otherwise carrying out the scheme and other acts of misconduct alleged herein, so as to make Defendant US Natural Gas Corp individually and jointly liable with Defendant US Natural Gas Corp WV for Plaintiffs' allegations.  Accordingly, throughout the remainder of this Complaint, US Natural Gas Corp WV and US Natural Gas Corp shall individually and are collectively referred to as "USNG."

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states (diversity) and the amount in controversy exceeds $75,000 as to each Plaintiff.

3

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of property giving rise to the claim and subject of the action is situated in the Southern District of West Virginia.

## FACTUAL BACKGROUND

14.     This case arises from a dispute related to an investment scheme to sell to the Plaintiffs' interests in a natural gas well (the "Butler Davis Farm Well No. 5" or the "mineral estate") operated by Defendants (or collectively "USNG") in Wayne County, West Virginia.

15.     Defendants are in the business of soliciting money for investment in, exploring for, and developing oil and gas wells.

16.     Defendants offer for sale to investors, fractional shares of "working interests" in these wells and promise to pay royalties.

17.     Plaintiffs are informed and believe that USNG claims to be the current lessee of the mineral estate and by virtue of that claim is currently extracting natural gas from the mineral estate.

18.     American Energy Holding, LLC ("AEH"), was originally formed as a Tennessee Limited Liability Company based in Chattanooga, Tennessee, operated generally by Harry Thompson.

19.     Wilon Resources, Inc. ("Wilon"), was originally formed as a Tennessee Corporation, based in Chattanooga, Tennessee, operated generally by Harry Thompson.

20.     During the period of approximately 2001 through 2009, Harry Thompson operated both AEH and Wilon as one general business entity.  AEH generally functions in the

business of soliciting money for investment in energy products, while Wilon served to construct, develop and operate the same energy projects.

21.     In early 2006, Harry Thompson, on behalf of AEH and Wilon, represented to the Plaintiffs that Wilon had leased certain property in Wayne County, West Virginia, specifically including a tract known as the Butler Davis Farm Area, for the purpose of constructing and operating natural gas wells.

22.     Although AEH/Wilon made these representations to the Plaintiffs, in fact, Wilon did not have a lease of the subject property.

23.     On February 14, 2006, Plaintiffs, for $350,000, entered a Subscription Agreement with American Energy Holdings, LLC ("AEH") to purchase 70% of an 81.5% working interest in the Butler Davis Farm Well No. 5 located in Wayne County, West Virginia. Under the Subscription Agreement, the Plaintiffs were to receive 70% of 81.5% of the net revenues.

24.     In or about January 2008, American Energy Holdings, LLC ("AEH") sold or transferred its interests, including the Plaintiffs' interest in the Butler Davis Farm Well No. 5, to Wilon Resources, Inc. ("Wilon").  As successor to American Energy Holdings, LLC, Wilon assumed AEH's obligations under the Subscription Agreement and must perform AEH's obligations to the Plaintiffs.

25.     On January 24, 2008, Wilon assigned to the Plaintiffs 70% of an 81.5% working interest in the Butler Davis Farm Well No. 5.  That assignment was recorded in Wayne County, West Virginia on June 2, 2008.

26.     On March 27, 2009, Wilon amended the subscription agreement of February 14, 2006 with the Plaintiffs, wherein Wilon promised to pay the Plaintiffs':

… a priority distribution of ten percent (10%) per annum on their initial purchase of three hundred fifty thousand dollars ($350,000) to be computed from August 14, 2006 to the date the first royalty payment is made according to the percentage of ownership that the said Wallace L. Scruggs, Jr. and Renee Scruggs has in the Butler Davis Well No. 5. At the election of Wilon Resources, Inc. payments of the priority distribution may be made in equal quarterly installments within forty two (42) months until the priority distribution is paid in full plus quarterly payments of the unpaid balance at eight percent (8%) per annum.

27.      On November 10, 2009, E 2 Investments, LLC ("E 2"), a Florida company wholly owned by USNG, entered into a securities purchase agreement wherein E 2 agreed to purchase all of the outstanding shares of Wilon Resources, Inc. from Harlis Trust.   As successor to Wilon, E 2 assumed Wilon's obligations under the Subscription Amendment, the Amendment, the Assignment, and must perform Wilon's obligations to the Plaintiffs.

28.      On or about March 19, 2010, USNG shareholders agreed to an exchange of shares with Wilon where by USNG acquired all of the outstanding shares of Wilon and hold Wilon as a wholly-owned subsidiary.  As successor to Wilon, USNG assumed Wilon's obligations under the Subscription Amendment, the Amendment, the Assignment, and must perform Wilon's obligations to the Plaintiffs.

29.      On or about March 19, 2010, Wilon completed a name change to US Natural Gas Corp WV.

30.      On or about May 28, 2010, USNG received notice from the appropriate state agencies that the acquisition of Wilon by USNG was effective.  Consequently, USNG assumed the obligations under the Subscription Amendment, the Amendment, the Assignment, and must perform E 2's obligations to the Plaintiffs.

31.     Defendants agreed, or assumed the responsibility, to pay Plaintiffs a royalty on all the natural gas produced from the wells as set forth in the Subscription Amendment, the Amendment, the Assignment (the "contracts") which require a payment of a certain value of the natural gas produced from each well.

32.     The contracts are definite and certain with respect to the identification of the property and all terms thereof.

33.     The contracts contain an implied covenant of good faith and fair dealing.

34.     As the purported Lessees or ultimate Assignees, Defendants were obligated, both expressly and impliedly, and as a matter of law, to operate the wells in the best interests of the Plaintiffs so that they could realize the benefits from the extraction of their minerals from their property.

35.     The acts and conduct of USNG, to the extent they were intentional, were willful and wanton and in utter disregard of Plaintiffs' rights.

36.     Plaintiffs have fully performed all obligations imposed on Plaintiffs and all conditions precedent or subsequent have been satisfied.

37.     To date and since first entering into the Subscription Agreements, Plaintiffs have receive one royalty payment of $141.07 on or about May 24, 2011 for gas revenues from, purportedly, December 2010 – February 2011.


## COUNT I – BREACH OF CONTRACT

38.     Plaintiffs incorporate by reference the allegations in paragraphs 1- 37 above as if fully set forth herein.

39.     Defendants breached their express contractual duties and responsibilities to Plaintiffs under the Subscription Amendment, the Amendment, and the Assignment (the "contracts"), and Plaintiffs were damaged thereby.

40.     Defendants breached their implied covenant of good faith and fair dealing when they breached the terms of the contracts, and Plaintiffs were damaged thereby.

41.     Defendants have intentionally failed and refused to pay to Plaintiffs the royalties and other payments as required in accordance with the contracts, and Plaintiffs were damaged thereby.

42.     Plaintiff has repeatedly requested USNG comply with its contractual obligations but USNG has failed and refused to do so.

43.     Defendants continue to not pay Plaintiffs the royalties and other payments to which Plaintiffs are entitled under the contracts, and Plaintiffs were damaged thereby.

44.     On information and belief, USNG has made an intentional and deliberate business decision (in wanton, willful, and reckless disregard for the Plaintiffs) to breach its contracts with Plaintiffs rather than honoring its obligations thereunder.

45.     Plaintiffs are entitled to recover all rents, royalties, and other damages of which they were deprived by Defendants' breach of the contracts.

46.     As a result of Defendants' breaches of the contracts, Plaintiffs have been damaged in an amount to be determined at trial, but no less than $350,000.00.

**COUNT II – NEGLIGENCE**

47.     Plaintiffs incorporate by reference the allegations in paragraphs 1- 46 above as if fully set forth herein.

48.     The Defendants owed the Plaintiffs certain duties arising from the handling of funds belonging to the Plaintiff and entrusted to the Defendants for investment purposes.

49.     Among the duties owed to the Plaintiffs by the Defendants is the duty to properly secure leasing rights to the real state which is to be used and drilled upon for natural gas production purposes, such that the Plaintiffs investment money is properly used for a lawfully constructed natural gas well.

50.     The Defendants also owe the Plaintiffs a duty to competently manage the operations of the well(s) such as to maximize the return on investment on behalf of the investors, such as the Plaintiffs.

51.     The Defendants also owe the Plaintiffs a duty to maintain the wells and associated production equipment in order to provide for the effective and efficient operation and utilization of the wells.

52.     The Defendants also owe the Plaintiffs a duty to market any and all natural gas extracted such as to maximize return on investment for the investors.

53.     The Defendants breached its duties to the Plaintiffs, including all of the duties identified in paragraphs 49 through 52 above.

54.     The Defendants negligently failed to properly secure leasing rights to the real estate upon which the Plaintiffs well was constructed.

55.     The Defendants negligently operated the wells and associated equipment such that revenue and return on investment has not been optimized for the investors.

56.     The Defendants have failed to properly maintain the wells and have failed to properly market the mineral extracted from the wells in order to maximize return on investment for the investors.

57.     These breaches and negligent operation, as described herein, have injured the Plaintiffs.

58.     The Defendants are responsible for these breaches and negligent operation, and should be found liable and forced to compensate the Plaintiffs for their injuries.

## COUNT III – BREACH OF FIDUCIARY DUTY

59.     Plaintiffs incorporate by reference the allegations in paragraphs 1- 58 above as if fully set forth herein.

60.     Defendants owe the Plaintiffs certain fiduciary duties, including but not limited to, the duties of fidelity, good faith, fair dealing, loyalty, diligence, prudence, care, honesty, and the duty to refrain from engaging in self-dealing.

61.     The Defendants also owed the Plaintiffs the duty to properly acquire and perfect the appropriate leases on real estate such as to be able to lawfully extract natural gas from the real estate in which the wells are constructed.

62.     The Defendants owed the Plaintiffs a fiduciary duty related to the handling of the Plaintiffs investment money which was to be used solely in the construction of a gas well to which the Defendants and the Plaintiffs would together thereafter, and have a working interest therein.

63.     The Defendants and only the Defendants were in the position to know whether or not leasing rights had been secured for the subject real estate, and only the Defendants were in the position to actually make sure that the appropriate leases had been secured.

64.     The Defendants knew or should have known that they did not have the right to drill on the Butler Davis property.

65.     The Defendants breached their fiduciary duties by failing to secure the rights to drill on the subject property.

66.     These breaches of fiduciary duty were material breaches that undermine the purpose and intent of the Plaintiffs entrusting their investment money to the Defendants.

67.     These breaches of fiduciary duty have injured the Plaintiffs.

68.     The Defendants also breached their fiduciary duty to the Plaintiffs by failing to pay all of the correct and proper royalties due to them pursuant to either the Subscription Agreement, the Amendment, and or the Assignment.

69.     The Defendants intentionally, willfully, and recklessly violated their fiduciary duties to Plaintiffs, thereby justifying an award of punitive or exemplary damages.

70.     As a result, the Plaintiffs have suffered a loss in connection with their investment in the gas wells in an amount to be determined at trial.

71.     The Defendants should be held responsible and forced to compensate the Plaintiffs for these breaches of fiduciary duty.

## COUNT IV – FRAUD

72.     Plaintiffs incorporate by reference the allegations in paragraphs 1-71 above as if fully set forth herein.

73.     At or near the time Defendants sold the Subscription Agreement, the Amendment, and the Assignment (the contracts) to Plaintiffs, the Defendants made misstatements of material fact or failed to disclose material facts.

74.     Specifically, Harry Thompson represented to the Plaintiffs that Wilon had the legal right to drill and place gas wells on the Butler Davis tract in Wayne County, WV, and that the Plaintiffs investment would be used for that purpose.

75.     Wilon knew or should have known that no lease had been secured on the Butler Davis property, such that the placement of a well on that property would be legally inappropriate.

76.     After the acquisition of Wilon by Defendant Anderson and Defendant USNG, Anderson knew that his company did not have a proper lease on the Butler Davis tract upon which the Plaintiffs well had been placed.

77.     Although Defendant Anderson knew that the Butler Davis property was not under lease, he continued to represent to the Plaintiffs that the property was leased and that a well had been properly placed at that location.  Anderson made such knowingly false representations in correspondence to prior attorneys for the Plaintiffs dated January 11, 2011 and June 6, 2011.

78.     Anderson knowingly mislead the Plaintiffs as to the status and operation of the well and property.

79.     The misrepresentations by the Defendant, and specifically those of Defendant Anderson, were material misrepresentations.

80.     The Plaintiffs would not have invested in these contracts or gas well absent the Defendants misrepresentations of material fact and/or concealment of material fact.

81.     The Plaintiffs had no way of knowing that the Defendants had lied about having leased the property until recently finding out from a third party.

82.     As a result of the actions of Defendants fraudulent conduct, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $350,000.00.

83.     Plaintiffs would not have invested in these contracts or securities absent Defendants' misrepresentations of material fact and/or concealment of material fact.

84.     Defendants' fraudulent conduct was willful, malicious, and with conscious disregard for the great and obvious risk of harm to Plaintiffs and justifies an award of punitive or exemplary damages.

## PUNITIVE DAMAGES

85.     Some or all of Defendants' act and omissions as alleged herein, and as will be further developed in discovery and at trial, were grossly negligent, reckless, deliberate, willful, wanton, or intentional, and as such were egregious in nature entitling Plaintiffs to an award of exemplary or punitive damages in an amount that is fair and just under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Scruggs's respectfully pray that this Court grant the following relief:

1.  A judgment for the Plaintiffs and against Defendants, jointly and severally, for compensatory damages in the amount of $350,000.00 less the amount of any income received thereon, plus pre- and post-judgment interest as allowed by law;

2.  Punitive or exemplary damages in an amount to be determined at trial;

3.  An accounting of the natural gas production at each well, the amount of gross and actual production sold, the gross proceeds generated, and payment received, the amount of royalty paid to each interest holder for each interest in each well, any and all deductions taken by Defendants including but not limited to deductions of minerals or use of minerals in lieu of payment for services provided to Defendants;

4.  Attorney fees, costs, and disbursements of this action; and

5.  For all other specific and general relief as the Court deems just and proper.

13

6.  PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.


Date:  November 27, 2013

Respectfully submitted,

s/*Robert R. Waters*

Robert R. Waters, Esq.
WV State Bar ID 7627
Steven M. Wright, Esq.
WV State Bar ID 12118
WATERS LAW GROUP, PLLC
633 Seventh Street
Huntington, WV 25701
Tele:  304-522-6658
Fax:  304-522-7722

14