UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

WALLACE . SCRUGGS, JR. and
RENEE SCRUGGS,

                Plaintiffs,

v.                                          Civil Action No. 3:13-CV-30435

WAYNE ANDERSON,
US NATURAL GAS CORP WV and
US NATURAL GAS CORP.

                Defendants.

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Now comes the Defendants, by counsel, and respectfully move to compel arbitration of Defendants' claims now pending before this Court in accordance with Defendants' arbitration agreement with Plaintiffs. In support of their Motion, the Defendants state as follows:

### PRELIMINARY STATEMENT

Arbitration agreements are presumptively valid and represent the preferred method to resolve disputes. The Plaintiffs entered into a Subscription Agreement with American Energy Holding, LLC dated February 14, 2006. Exhibit "A." Under the agreement, the Plaintiffs purchased a 70% of 81.5% working interest in Butler Davis Farm Well No. 5 located in Wayne County, West Virginia for the amount of $350,000.00. The final paragraph of that agreement contains an arbitration provision for any dispute under that agreement. The arbitration provision contained in the agreement unequivocally requires the parties to submit all disputes which arise under the Agreement

to arbitration if they are unable to resolve such disputes.

As evidenced by the filing of this lawsuit, a dispute presently exists regarding the investment and distribution, and the parties have been unsuccessful in their attempts to resolve the controversy. Rather than request arbitration under the agreement, the Plaintiffs filed this lawsuit.  However, no court has the authority to hear the merits of the underlying claims, as the parties agreed that all disputes under the agreement would be submitted to arbitration.

Accordingly, the Defendants now move to compel arbitration of all claims asserted by the Plaintiffs regardless of the theories on which the claims are premised. Arbitration is fully enforceable under both the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16 and West Virginia law, and this Court should compel the Plaintiffs to honor their arbitration agreement.


## STATEMENT OF FACTS

The Plaintiffs entered into a Subscription Agreement with American Energy Holdings, LLC dated February 14, 2006.  At that time, the owner of American Energy was Harry Thompson.  Under this agreement, the Plaintiffs received a 70% of 81.5% working interest in Butler Davis Farm Well No. 5 located in Wayne County, West Virginia for the amount of $350,000.00.  Mr. Thompson was also the owner of Wilson Resources, Inc.  According to the Plaintiffs, in or about January 2008, American Holdings sold or transferred its interest in the Butler Davis Farm Well No. 5 to Wilson Resources, Inc.

On or about January 24, 2008, Wilson Resources assigned to the Plaintiffs a 70% of 81.5% working interest in Butler Davis Farm Well No. 5 located in Wayne County, West Virginia for the amount of $1.00.  Exhibit "B."

On or about March 27, 2009, Wilson Resources prepared an Amendment to Subscription Agreement Dated February 14, 2006 and Assignment Dated January 24, 2008 Between Wilson Resources, Inc. and Wallace L. Scruggs, Jr. and Renee Scruggs.  Exhibit "C."

On or about November 10, 2009, E 2 Investments, LLC entered into a securities purchase agreement wherein E 2 agreed to purchase all outstanding shares of Wilson Resources.  On or about March 19, 2010, the shareholders of Defendant, US Natural Gas Corp., agreed to acquire all outstanding shares of Wilson.  On or about March 19, 2010, Wilson Resources changed its name to US Natural Gas Corp. WV.

That arbitration provision contained in the initial Subscription Agreement states:

> We agree that all disputes between the Company and me relating to this investment shall be resolved exclusively through binding arbitration conducted under the commercial arbitration rules of the American Arbitration Association.  The Arbitration award is enforceable as a judgment of any court having proper jurisdiction.  The costs of arbitration shall be split equally between the company, and each party and each shall bear that party's own legal expenses.

A dispute presently exists over the distribution of fees and other matters between the Plaintiffs and Defendants. The dispute has existed for some time and the parties have attempted to resolve it, but have been unsuccessful.

Because there is presently a dispute between the parties, and it is clear from the filing of this lawsuit that the Plaintiffs have not and will not honor the arbitration agreement, the Defendants now move to compel arbitration because the arbitration provisions are fully enforceable under both the FAA and West Virginia law. As will be demonstrated below, it is clear that Defendants are entitled to an order compelling arbitration.

## STANDARD

Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. *American General Life and Accident Insurance Company v. Wood*, 429 F.3d 83 (4th Cir. 2005), *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 1995). Under the Federal Arbitration Act ["FAA"], a party may compel arbitration if it can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Senior Management, Inc.*, 240 Fed. Appx. 550 (2007 unpublished opinion), quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). When a trial court is required to rule upon a motion to compel arbitration pursuant to the FAA, the authority of the trial court is limited to determining these issues. Syl. Pt. 4, *Id.*, citing *State ex rel. TD Ameritrade, Inc.* v. *Kaufman*, 692 S.E.2d 293, 2010 W.Va. LEXIS 8, *see AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415 (1986), *A.T. Massey coal Co., Inc. v. International Union, United Mine Workers of America*, 799 F.2d 142 (4th Cir. 1986), *cert. denied,* 418 U.S. 1033, 107 S.Ct. 1964, 95 L.Ed. 2d 536 (1987). Whether parties have agreed to arbitrate a particular dispute is typically an "issue for judicial determination." *Granite Rock Company v. International Brotherhood of Teamsters*, 2010 U.S. LEXIS 5255 (2010).

**ARGUMENT**

I.    **ARBITRATION SHOULD BE COMPELLED PURSUANT TO THE AGREEMENTS AND THE FEDERAL ARBITRATION ACT.**

The arbitration agreement is enforceable under the FAA, which mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements[,]…to place [these] agreements upon the same footing as other contracts[, and to]…manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted). As the Supreme Court recently reiterated, the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978, 981 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)); *see also Vaden v. Discover Bank*, 129 S. Ct. 1262, 1271 (2009) (quoting *Preston*). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 24-25.

As set forth above, there are four (4) criteria that must be met for a party to compel arbitration. *American General Life and Accident Insurance Company v. Wood*, 429 F.3d 83 (4th Cir. 2005), *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 1995). All of those criteria are satisfied in this matter, thus the Plaintiffs are entitled to compel arbitration.

### A.   A DISPUTE EXISTS BETWEEN THE PARTIES.

It is incontrovertible that a dispute exists between the parties.  The Plaintiffs have filed the instant lawsuit, claiming that the Defendants have not paid the Plaintiffs amounts owed under the Subscription Agreement.  It is, therefore, clear that a dispute exists between the parties.

### B.   THE DEFENDANTS HAVE SUED THE PLAINTIFFS UNDER AN AGREEMENT WHICH CONTAINS A VALID AND ENFORCEABLE ARBITRATION PROVISIONS APPLICABLE TO ALL DISPUTES UNDER THAT AGREEMENT.

The United States Supreme Court, federal courts and state courts all favor arbitration where there is an agreement to arbitrate by the parties. *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 94 S.Ct. 629 (1973), *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415 (1986), *Hooters of America, Inc., v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999), *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009). The FAA reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 2010 LEXIS 4981 (2010). "A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. §2, Id.* Courts "may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 at 92 (4th Cir. 1996) (internal quotations omitted).  "The purpose of the arbitration act is to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc., supra* 514 U.S. 52, 53-54 (1995). "It is presumed that an arbitration provision

in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract." Syl. Pt. 3, *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009), quoting Syl. Pt. 3, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977), *American General v. Wood*, 429 F.3d 83 (4th Cir. 2005). Courts have repeatedly held that arbitration agreements should be enforced where the parties knowingly entered into bargained for contracts containing such provisions, particularly where the parties have equal bargaining power. *Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001), *Mastrobuono v. Shearson Lehman Hutton, Inc., supra* 514 U.S. 52 (1995), *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009), *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977). In addition, this Court has recognized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Toppings* 140 F.2d 683 at 685, quoting *Hooters of America, Inc., v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927 (1983), *Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001).

Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. *American General Life and Accident Insurance Company v. Wood*, 429 F.3d 83 (4th Cir. 2005), *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 1995). The arbitration provision contained in the Subscription Agreement "[a]ll disputes between the Company and me relating to this investment". That provision does not limit the type of dispute to be submitted to arbitration. Therefore, it is clear the parties to the Agreement intended **all** disputes arising under the Agreement to be heard by an arbitrator.

### C.    THE AGREEMENTS RELATE TO INTERSTATE COMMERCE.

The Subscription Agreement is between entities located in Maryland and Florida and deal with minerals located in Wayne County, West Virginia.  The Subscription Agreement deals with the production of natural gas from West Virginia which is transmitted all over the United States.  During the pendency of the Agreement, the Defendants existed and maintained financial accounts outside of West Virginia, where they made and/or received payments. Therefore, by the terms of the Agreement, it relates to interstate commerce.

### D.    PLAINTIFFS HAVE FAILED, NEGLECTED OR REFUSED TO ARBITRATE THE DISPUTE.

Plaintiffs filed this lawsuit based upon an alleged breach of the Subscription Agreement claiming breach of contract, misrepresentation and other matters which address the merits of their claims against the Defendants.  Plaintiffs rely upon the Subscription Agreement as the basis for their claims this action.  However, the complaint wholly ignores the provisions of the Agreement which require the parties to submit all disputes under the Agreement to arbitration. The filing of the present complaint clearly evidences Plaintiffs' refusal to participate in arbitration and a neglect of the agreements to arbitrate, as the present complaint addresses the merits of the claim without any request that the parties arbitrate the disputes.

Thus, all four (4) factors are clearly satisfied. There is a dispute that exists between the parties, as evidenced by the filing of the present complaint; there is a Subscription Agreement at issue which contains arbitration provisions; the Subscription Agreement and disputes relate to interstate commerce; and the Plaintiffs refuse to arbitrate. Under the FAA and the applicable precedent, the Defendants are, therefore, entitled to a finding that the dispute must be submitted to arbitration and arbitration must be compelled.

II.    ALL CLAIMS AND DISPUTES UNDER THE SUBSCRIPTION
AGREEMENT ARE SUBJECT TO THE ARBITRATION PROVISION
CONTAINED THEREIN.

Whether parties have agreed to arbitrate a particular dispute is typically an "issue for judicial

determination." *Granite Rock Company v. International Brotherhood of Teamsters*, 2010 U.S.

LEXIS 5255 (2010), H*owsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588 (2002).

While the FAA creates a body of federal substantive law of arbitrability applicable to any arbitration

agreement within the Act, in evaluating whether the parties have entered into a valid arbitration

agreement, the court must look at state law principles. *Cap Gemini Ernst & Young, U.S., LLC v.

Nackel*, 346 F.3d 360 (2003), *Ingle v. circuit City Stores, Inc.*, 540 U.S. 1160, 124 S.Ct. 1169 (2004),

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 113 S.Ct. 1920 (1995), *Hill v. Peoplesoft

USA, Inc.*, 412 F.3d 540 (4th Cir. 2005).

There have been several recent decisions by the Supreme Court of Appeals of West Virginia

regarding arbitration agreements and the trial court's limited role when determining whether a

dispute is subject to arbitration. *State ex rel. TD Ameritrade, Inc.* v. *Kaufman*, 692 S.E.2d 293

(2010*), Ruckdeschel v. Falcon Drilling Company, LLC*, 2010 W.Va. LEXIS 42, 693 S.E.2d 815

(2010). In determining which claims are subject to arbitration, a court must consider whether an

intent exists to defer all or certain claims to arbitration regardless of whether the claims accrued

before or after the contract's termination date. *See Virginia Carolina Tools, Inc. v. International Tool

Supply, Inc.*, 984 F.2d 113 (4th Cir. 1993). As the court found in *Wells*, when an arbitration provision

requires arbitration for "any dispute" under the agreement, all claims which arise under that

agreement must be submitted to arbitration. *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d

583 (2004).

In the present case, the parties entered into a Subscription Agreement which contained arbitration provisions for any dispute arising under the Subscription Agreement. There is no limitation on the claims under the Subscription Agreement which must be submitted to arbitration and none implied in any provision of those agreements. It is evident by the complaint filed herein, that the Plaintiffs claims against the Defendants relate to monies allegedly owed under the Subscription Agreement. Therefore, it is clear that all of the claims must be submitted to arbitration and that arbitration must be compelled.

### III.   THE AGREEMENTS CONTAIN BARGAINED FOR PROVISIONS, INCLUDING ARBITRATION PROVISIONS AGREED TO BY PARTY ATTORNEYS.

Courts have repeatedly held "[i]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract…" Syl. Pt. 3, *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d 583 (2004), quoting Syl. Pt. 3, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977), see also *American General v. Wood*, 429 F.3d 83 (4th Cir. 2005). If a party argues that an arbitration provision was thrust upon him or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court. *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d 583 (2004). That determination must be made by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract. *Id.*

There is absolutely no question that the Subscription Agreement, including the arbitration provisions, were bargained for and are fully enforceable. The Subscription Agreement is between

sophisticated parties.  Their sophistication reflects the equality of bargaining power. Therefore, the legal presumption that the arbitration provision in the agreements was bargained for is irrebuttable.

A decision from the West Virginia Supreme Court of Appeals aptly supports Defendants' position that the present arbitration provision is within a bargained for contract. *State ex rel. Wells v. Matish*, 215 W.Va. 686, 600 S.E.2d 583 (2004). The contract at issue in *Wells* was between a television station and a news anchor. *Id.* The Court found that while the contract was prepared by the television station, it was the clear the terms were negotiated and the agreement customized to Wells' situation. *Id.* It was found to be significant that Wells was an experienced anchor and reporter who negotiated his employment agreement; thus, he was not an unsophisticated party. *Id.* Therefore, the court determined that the provisions were bargained for and not a contract of adhesion. *Id.*

Even in cases which involve contracts of adhesion, arbitration provisions contained therein have been upheld. In considering West Virginia law, the 4th Circuit has recognized that there must be a distinction between good adhesion contracts which should be enforced from bad adhesion contracts which should not. *American General v. Wood*, 429 F.3d 83 (4th Cir. 2005), citing *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002). In 2009, the Supreme Court of Appeals of West Virginia determined that although an agreement was a contract of adhesion which contained boilerplate language, the agreement was not unconscionable. *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009). A similar finding was made by the 4th Circuit in 2005 in *American General Life and Accident Insurance Company v. Wood*, 429 F.3d 83 (4th Cir. 2005). Even when a contract is a contract of adhesion, courts must consider other factors to determine its validity, including the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the alleged aggrieved party and the existence of

unfair terms in the contract. *Id.* In this instance, the parties to the Subscription Agreement are all involved in investing in natural resources who did not have a gross inadequacy of bargaining power. They also had the opportunity to negotiate the terms of the contract. It is, therefore, apparent that the Subscription Agreement contained bargained for provisions agreed to by sophisticated parties.

## IV.     THE MOTION TO COMPEL ARBITRATION SHOULD BE DECIDED AS A THRESHOLD MATTER.

Whether parties have agreed to arbitrate a particular dispute is "undeniably an issue for judicial determination." *Toppings v. Meritech Mortgage Services*, 2001 U.S. Dist. LEXIS 11275 (S.D.W.Va. 2001), citing *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986). That determination can and should be made now. The Plaintiffs rely on the Subscription Agreement as the basis for this action.  This evidences the fact that the language of the Subscription Agreement controls the arbitrability, and this Court is the proper authority to make that determination.

In that complaint, the Plaintiffs admit they entered into the Subscription Agreement for valuable consideration. The Plaintiffs cannot argue that a judicial determination based upon the Subscription Agreement is somehow premature or inappropriate. The Plaintiffs are, therefore, estopped from arguing to the contrary before this or any other Court.

## V.     THE ISSUE OF ARBITRATION IS A LIMITED ONE.

The issue before this Court is narrow- arbitration. It is easily susceptible to resolution. The Court need not address the merits of the underlying dispute. The Subscription Agreement is the basis for the Defendants' assertion that the parties must submit the dispute to arbitration. The Subscription

Agreement are also the basis of the Plaintiffs' claims against the Defendants in the complaint filed in this Court.  It is clear that the parties rely on the Subscription Agreement without dispute as to the validity of the Subscription Agreement. It is abundantly clear from a review of the Subscription Agreement that it is not lengthy, overly complicated agreement. In addition, while arbitration provisions contained in contracts of adhesion have repeatedly been upheld, it is obvious there are a limited number of parties to the Agreements rather than a contract drafted by a large corporation signed by thousands of people.

This is an issue of judicial determination which should be decided based on the pleadings and documents before this Court, including the attachments to these pleadings.

## VI.     RECENT DECISIONS DEMONSTRATE THAT ARBITRATION ISSUES ARE TO BE DECIDED AS THRESHOLD MATTERS.

Two recent decisions demonstrate that motions to compel arbitration are threshold matters. In *Strawn v. AT&T Mobility LLC*, 593 F.Supp.2d 894 (S.D.W.Va. 2009), this Court recognized that the FAA mandates that if parties execute a valid agreement to arbitrate disputes, a federal court must compel arbitration. *Id*. In that case, this Court granted summary judgment and compelled arbitration, finding the existence of a dispute between the parties, a written agreement that included an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law, the relationship of the transaction to interstate or foreign commerce and the failure, neglect or refusal of a party to arbitrate the dispute. *Id.* This was established by simply looking at the agreements themselves without resort to any further evidence. *Id. Strawn* is particularly significant because it considered arbitration in a consumer transaction. *Id.*

Similarly, the District Court for the Northern District of West Virginia granted Cingular and AT&T Mobility's motion to compel arbitration pursuant to the Federal Arbitration Act based on the agreements themselves without requiring any discovery. *Wince v. Easterbrooke Cellular Corporation*, 681 F.Supp.2d 679 (N.D.W.Va. 2010). In that case, the parties disputed whether the arbitration provision was enforceable under general principles of contract law. *Id.* However, based on the language and facts presented in the pleadings, without the necessity of discovery, the Court concluded that the arbitration clause was not unconscionable even though it prohibited class action relief and contained additional restrictions. *Id.* Clearly, if these consumer cases were able to be decided quickly, there is no reason why the present motion to compel arbitration cannot also be resolved now.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court enter an order compelling the Plaintiffs to arbitrate their dispute with Defendants, together with such other and further relief as the Court deems proper.

WAYNE ANDERSON,
US NATURAL GAS CORP WV and
US NATURAL GAS CORP.
By Counsel

s/ R. R. Fredeking, II
R.R. Fredeking, II - W.Va. Bar #1288
*FREDEKING & REDEKING LAW OFFICES, LC*
511 Eighth Street
Huntington, WV 25701
(304)525-7701